DECIDED APRIL 9, 1985.

*William A. Dinges*, for appellant.
*Robert B. Hocutt, William D. Strickland, James P. Peters*, for appellees.

69960. IN RE B. J. S. & R. S.
(330 SE2d 186)

BIRDSONG, Presiding Judge.

Juvenile Delinquency — Sufficiency of Circumstantial Evidence. Though the facts of this case were reported, the transcript is not available. Therefore, the parties have agreed upon a summary of the evidence. That summary shows that on a Friday evening, April 27, 1984, at 5:00 p.m., the Morris Street School closed with everything apparently in good order. It was shown the school buildings were protected by a silent alarm that sounded in the local police station. However, the windows were not wired. Thus simple breakage of a window was not designed to trigger the alarm. It also was shown the silent alarm on occasion would malfunction and sound even in the absence of an illegal entry.

At about 10:24 a.m. on Saturday, April 28, 1984, the silent alarm sounded in the police station and an officer was directed to investigate. The officer arrived at the school grounds at about 10:29 a.m. He observed R. S. (a 15-year-old male) and B. J. S. (R. S.'s younger brother) standing on the school grounds outside a trailer used as a classroom. When they saw the police car approach, the two boys ran. However, the officer knew the boys and recognized them. The chief security officer of the school arrived at the school at about 10:30 a.m. and noticed a BB-sized hole in the glass window of the door to the trailer. The other officers who preceeded him to the school had already opened the trailer door and were inside. The security officer observed that no vandalism had occurred and nothing seemed disturbed except two desk drawers were open, though these could have been left open at the close of school on Friday. The principal of the school testified nothing was taken and no damage to the building had occurred.

R. S. testified he and his brother B. J. S. were taking two dogs for a walk and decided to take a shortcut through the school grounds. As they passed the trailer, the boys noticed the hole in the window. At that very moment, the police car arrived and, fearing they would be blamed for breaking the window, both boys ran. R. S. denied either he or his brother owned a BB gun, broke a window, or entered any school building. This in substance was the evidence submitted to

the juvenile court. The court returned findings of delinquency, apparently accepting the theory of the state that the two boys entered the trailer (as manifested by the sounding of the burglar alarm and the open desk drawers) and panicked (apparently from some unknown cause inasmuch as the silent alarm sounded only in the police station) and fled outside where, upon seeing the police car, the two boys ran from the scene to avoid apprehension.

There is an indication in the record that before the hearing and continuing afterward, the two boys' mother sought to find any possible eyewitnesses to the incident. After the adjudication as delinquents, the mother found an invalid who lived across the street from the school grounds. This person had never been interviewed by the police nor anyone in regard to the incident. He never came out of his house and he was unknown to the parties to the litigation. This witness affirmed that he had been sitting at his window at about 10:30 a.m. on the morning of April 28, 1984. He observed two young boys (other than R. S. and B. J. S.) apparently whom he recognized and named. One of these boys had a BB gun. The invalid also saw R. S. and B. J. S. enter the school grounds on a path leading through the school grounds. At that moment, he saw a police car approach. The two boys with the BB gun threw the gun in a ditch and ran apparently without being seen by the police. The police drove up, stopped and when R. S. and B. J. S. ran, the officer pursued them. The two boys who had the BB gun later came back and retrieved the BB gun from the ditch. The invalid had R. S. and B. J. S. in his view from the time they entered the school grounds until they ran from the officer and the invalid did not see R. S. or B. J. S. with a BB gun, did not see either break a window or enter any school building.

Armed with this "newly discovered" evidence, R. S. and B. J. S. moved for a new trial. The juvenile court denied the motion for new trial, apparently either because due diligence had not been exercised or because the evidence would not effect a different result. It is the adjudication of delinquency and the denial of new trial that forms the basis of this appeal. *Held*:

We need not reach the question of the appropriateness of the denial of the motion for new trial for we are satisfied the juvenile court erred in finding requisite circumstantial evidence to support the crime undergirding the determination of delinquency. The court found the two juveniles guilty of burglary, i.e., the unlawful entry of the trailer with intent to steal something of value. We find sadly lacking any compelling evidence of an unlawful entry. Though there was evidence that two desk drawers were open, the evidence further reflected the drawers were otherwise undisturbed and it was candidly admitted that the drawers could have been left open at the close of school the day before. There is no evidence that the boys were at the

door, that the door was open (was ever opened except by the investigating officers), or any other indication that anyone had been in the trailer after closing on Friday. The other possible predicate for an unlawful entry was the sounding of the silent alarm. In that regard, it also candidly was admitted that the alarm occasionally malfunctioned. Nothing was damaged (apparently including the door) and nothing was missing. The only other basis for delinquency was flight, caused by the appearance of the police car and certainly not by the silent alarm. Flight was explained as being caused by a fear that the boys would be blamed incorrectly for the broken window.

It long has been the law of this state that where the evidence tends equally to sustain two inconsistent propositions, neither can be said to have been established by legitimate proof and certainly not through the guise of circumstantial evidence. See *Federal Reserve Bank of Atlanta v. Haynie*, 46 Ga. App. 522 (168 SE 112). The state had the burden of showing an illegal entry with the intent to steal something of value. In this case, it sought to meet that burden not by direct evidence but by circumstantial evidence, by inferences. The state does not in any reasonable sense meet its burden, until the evidence submitted tends in some proximate degree to establish the conclusions claimed to the requisite degree of certainty, and for this, the facts deduced must not only reasonably support the necessary conclusions, but also render less probable all inconsistent conclusions. See *Harris v. State*, 236 Ga. 242, 245 (223 SE2d 643); *Pless v. State*, 142 Ga. App. 594 (236 SE2d 842). Under the facts of this case, we cannot say (nor could a rational trier of fact) that it is less probable the desk drawers were left open or that the silent alarm malfunctioned, or that the boys fled for fear of being blamed unjustifiedly for breaking a window than that they broke into a classroom and then went outside for some unknown reason to await the arrival of a police car in order to run. Inasmuch as the state did not show that all other reasonable deductions other than guilt of burglary were less plausible than an illegal entry, the state did not meet its burden of establishing guilt exclusively on the basis of circumstantial evidence. See *Harris v. State*, supra, pp. 244-245.

*Judgment reversed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 9, 1985.

*John T. Minor IV*, for appellants.
*Stephen A. Williams, District Attorney, J. O. Partain III*,

*Steven M. Harrison, Assistant District Attorneys*, for appellee.